UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

THAM T. LAI,

         Plaintiff,

 -against-                6:15-cv-0195 (LEK/TWD)

DEIORIO FOODS INC., *et al.*,

         Defendants.

## **MEMORANDUM-DECISION and ORDER**

**I. INTRODUCTION**

*Pro se* Plaintiff Tham T. Lai ("Plaintiff") commenced this civil rights action on February 20, 2015 against her employer, Defendant DeIorio Foods, Inc. ("DeIorio"), and its purported parent organizations, LSCG Management, Inc., LaSalle Capital Group Partners, LLC, and LaSalle Capital Group Partners II-A LLC (collectively, "Defendants"). Dkt. Nos. 1 ("Complaint"); 7 ("Amended Complaint").[1] Presently pending before the Court are Defendants' Motion to dismiss for failure to state a claim as well as Plaintiff's Motion for leave to file a second amended complaint. Dkt Nos. 15 ("Motion to Dismiss"); 15-1 ("Memorandum"); 28 ("Motion to Amend"). For the following reasons, Plaintiff's Motion for leave to file a second amended complaint is granted and Defendants' Motion to dismiss is denied as moot.

**II. BACKGROUND**

Because this matter is before the Court on a motion to dismiss, the allegations of the

---

[1] On June 15, 2015, the Court terminated four individual Defendants who were named in the original Complaint but not included in Plaintiff's Amended Complaint. See Compl.; Am. Compl.

Complaint[2] are accepted as true and form the basis of this section. See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor"). Furthermore, in light of Plaintiff's *pro se* status, the allegations in the Complaint "must be construed liberally and interpreted to raise the strongest arguments that they suggest." Sykes v. Bank of Am., 723 F.3d 399, 403 (2d Cir. 2013) (quoting Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006)).

**A. Plaintiff's Employment with DeIorio**

Plaintiff was born in Vietnam and is a naturalized citizen of the United States of America. Dkt. No. 28 ("Second Amended Complaint") ¶ 8a. Plaintiff was employed by DeIorio in Utica, New York from July 6, 2011 until December 5, 2014. Id. ¶ 8b. From August 11, 2011 until July 16, 2013, Plaintiff received positive performance evaluations. Id. ¶ 8o.

Plaintiff alleges that her line supervisor at DeIorio, Ismetta Kucevic ("Kucevic"), discriminated, harassed, intimidated, and threatened her on a regular basis. Id. ¶ 8r. Kucevic is Bosnian and favors individuals who are also Bosnian. Id. ¶ 8q. On November 7, 2013, Kucevic threatened to suspend Plaintiff for three days without pay for an issue that Plaintiff was not involved in. Id. ¶ 8s. Following this incident, Plaintiff wrote a letter to Diane Platzke ("Platzke"), human resources manager, stating that Bosnian workers did not face similar treatment from Kucevic and outlining Plaintiff's concerns about her job security based on Kucevic's behavior. Id. ¶¶ 8t; 8ll.

---

[2] Since Plaintiff has filed a Motion for leave to file a second amended complaint, the Court will use the allegations contained in the Second Amended Complaint to form the basis of this section.

Plaintiff did not receive a response. Id. ¶ 8t.

On November 11, Kucevic accused Plaintiff of not filling out a report properly; Plaintiff contends that the report was filled out correctly. Id. ¶ 8u. Plaintiff then filed a hostile work environment grievance with her union on November 11, 2013. Id. ¶ 8v. On November 12, Plaintiff wrote a letter to Platzke stating that Kucevic formed a "clique" with a few close friends who all speak the same language. Id. ¶ 8w. The letter further stated that "the clique" would make false accusations and corroborate each other's statements and that Plaintiff was being harassed on a daily basis. Id. Plaintiff did not receive a response to the letter. Id.

On November 12, Kucevic called Plaintiff into her office and demanded that Plaintiff "sign a paper in secrecy and under duress." Id. ¶ 8x. Kucevic told Plaintiff that Platzke and Plaintiff's union steward for the Bakery, Confectionary, Tobacco Workers and Grain Millers' International Union, Local Union No. 53, Eugene Kane ("Kane"), "do not have to know about this." Id. ¶¶ 8x; 8dd. Following this incident, Plaintiff again wrote to Platzke, informing her that she no longer felt safe around Kucevic. Id. ¶ 8y. Plaintiff did not receive a response to the letter. Id. Also on November 12, Kucevic accused Plaintiff of making box labels incorrectly; however, Plaintiff did not make the box labels at issue, which was witnessed by Kricket McNair and others in the area. Id. ¶ 8aa.

On November 13, Plaintiff emailed Plant Manager Michelle Burnett ("Burnett") stating "I no longer feel safe." Id. ¶ 8bb. Burnett did not respond. Id. Later that day, Plaintiff sent another email to Burnett, outlining her history with Kucevic and requesting Burnett's assistance. Id. ¶ 8cc. Plaintiff did not receive a response. Id. Plaintiff sent another letter to Platzke stating that she felt that Kucevic and her "clique" were falsely accusing her and trying to wear her down. Id. ¶ 8ee.

Plaintiff did not receive a response. Id. On November 14, Plaintiff alleges that Kucevic was looking for her on the factory floor. Id. ¶ 8dd. Chuck Craig, from the facilities department, told Kane that Kucevic was harassing Plaintiff and that Burnett said "Tham is to be left alone." Id.

**B. Plaintiff's Suspension**

On November 15, Plaintiff and Kucevic were called to a meeting with Kane, Tammy Marchese, human resources consultant, and Fred Sarus ("Sarus"), production manager. Id. ¶ 8ff. Plaintiff contends that DeIorio trivialized Kucevic's conduct and there was no resolution to the situation as a result of the meeting. Id. On November 22, Plaintiff was angrily told to go to the office of vice president of manufacturing, Bryan Wilson ("Wilson"). Id. ¶ 8gg. A union representative was not present, in violation of Plaintiff's union contract. Id. Plaintiff was informed that an investigation was being conducted into the situation with Kucevic, but was not given any details or asked any questions. Id. Plaintiff was immediately suspended and told to stay at home until further notice. Id.

On November 22, Plaintiff emailed Burnett regarding the events of the previous day. Id. ¶ 8hh. Plaintiff did not receive a response. Id. On November 25, Plaintiff received a phone call from Platzke who requested that Plaintiff report to work at 1 pm. Id. ¶ 8ii. Platzke appeared to be unaware of Plaintiff's suspension. Id. Plaintiff reported to work and was approached by Sarus, who asked if she wanted to make up for the time she missed while suspended. Id. ¶ 8jj. Sarus told Plaintiff to report to his office after her shift. Id. ¶ 8kk. When Plaintiff arrived, Sarus was not there. Id. Plaintiff waited for approximately ten minutes and was told by a secretary that she could go home. Id. Plaintiff emailed Burnett and Platzke about this occurrence and did not receive a response. Id. ¶ 8ll. On November 26, Plaintiff emailed Burnett to inform her that she believed that

Wilson and Sarus's actions had risen to the level of an Equal Employment Opportunity Commission ("EEOC") issue and that she was afraid to be alone with them. Id. ¶¶ 8mm; 8nn. Burnett responded that DeIorio management would follow up with Plaintiff soon and that a meeting would be held. Id. ¶¶ 8mm, 8nn.

On December 3, Sarus falsely accused Plaintiff of returning late from break. Id. ¶ 8oo. Plaintiff alleges that she was not late, and that Sarus and Kucevic returned late from break on a regular basis and were not reprimanded. Id. On December 4, Plaintiff emailed Burnett regarding the false accusation and requesting a copy of the company's official break policy. Id. ¶ 8pp. Burnett referred Plaintiff's request to Kane, who informed her that the break policy used to be that employees were given a ten minute break once they walked into the break area, but that he did not know the break policy under Burnett's tenure. Id. ¶ 8qq. Plaintiff relayed Kane's response to Burnett and requested clarification but did not receive a response. Id. ¶ 8rr.

On December 10, Plaintiff emailed Burnett requesting her assistance because Kane was not answering Plaintiff's union questions. Id. ¶ 8tt. Plaintiff contends that since Kane works under Burnett, Burnett should be able to tell him to do his job. Id. Burnett denied Plaintiff's request, which Plaintiff alleges constitutes a denial of Plaintiff's right to union representation. Id.

On December 13, Plaintiff alleges that Kucevic "set Plaintiff up to fail" by refusing to allow co-workers to help Plaintiff. Id. ¶ 8uu. Plaintiff alleges that Kucevic was at the end of the production line laughing and taking pictures with her cell phone. Id. Later that day, Burnett suspended Plaintiff for seven days. Id. ¶ 8vv. Plaintiff received a written warning on December 20 for the incident that occurred on December 13. Id. ¶ 8ww. On December 20, Kane also wrote a union grievance for "unjust conduct" on Plaintiff's behalf. Id. ¶ 8xx.

5

### C. Plaintiff's Termination and Arbitration Ruling

On January 21, 2014, the EEOC issued an official charge of discrimination. Id. ¶ 8yy. On February 7, Wilson suspended Plaintiff and she was escorted out of the building. Id. ¶ 8zz. On February 13, Burnett and Wilson terminated Plaintiff's employment. Id. ¶ 8aaa. Plaintiff alleges that Burnett and Wilson were specifically named in the EEOC charge. Id.

Plaintiff's union steward, Patrick Rohan ("Rohan"), filed an unjust termination grievance against DeIorio on February 13 and a meeting was held with Plaintiff, Rohan, Wilson, and Burnett on March 21, 2014. Id. ¶¶ 8bbb, 8ddd. Burnett and Wilson refused to discuss the details of Plaintiff's termination and immediately walked out of the meeting. Id. ¶ 8ddd. Rohan requested an arbitration ruling for Plaintiff's unjust termination and on November 14, 2014, Arbitrator Margo Newman ruled in Plaintiff's favor, finding that Plaintiff should be reinstated to her position without further loss of pay or benefits. Id. ¶ 8fff.

### D. Reinstatement and Constructive Discharge

Despite the Arbitrator's ruling, Platzke refused to answer Plaintiff's questions regarding her return and refused to provide Plaintiff insurance coverage on her first day back, December 8, 2013. Id. ¶¶ 8iii, 8jjj, 8lll. Plaintiff was immediately ordered to take a drug test, which she alleges is a violation of her union policy and has not been ordered for other union members when returning from leave or vacation. Id. ¶ 8kkk. On February 20, 2014, Plaintiff attempted to contact her union representative but was informed that "the email address assigned to Eugene is for DeIorio's business and he has been asked to use it for that purpose only." Id. ¶ 8mmm.

Plaintiff alleges that she was constructively discharged on December 12 due to the intolerable conditions created by Defendants. Id. ¶ 8nnn. Following her return, Plaintiff alleges that

Defendants showed no remorse, made no changes, showed a blatant disregard for Title VII and its protected activities, and continued their patterns of discrimination and adverse actions against Plaintiff. Id. After her return, Defendants requested that Plaintiff resign and never return and drop her EEOC charges of discrimination. Id.

### E. Procedural History

Plaintiff received a right-to-sue letter for her first charge of discrimination on November 28, 2014 and for her second charge on December 4, 2014. Id. ¶¶ 8ggg, 8hhh. Plaintiff commenced this action by filing a Complaint on February 20, 2015 and an Amended Complaint on June 15, 2015. Compl.; Am. Compl. In her Second Amended Complaint, Plaintiff asserts the following causes of action: (1) discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; (2) breach of contract and/or promissory estoppel; (3) and vicarious liability.[3] Sec. Am. Compl. Plaintiff also seeks to add DeIorio Food Holdings, LLC as a Defendant. Mot. Amend at 1.

## III. Motion to Amend

Generally, a party may amend its pleading once as of right. FED. R. CIV. P. 15(a)(1). Once an as-of-right amendment becomes unavailable, a party may amend only with the consent of the opposing party or with leave of the court. FED. R. CIV. P. 15(a)(2). Leave to amend a pleading should be "freely given when justice so requires." Id. District courts are vested with broad discretion to grant a party leave to amend, and should deny such a request only in the face of undue delay, bad faith, undue prejudice to the non-movant, futility of amendment, or where the movant has

---

[3] Plaintiff does not restate her claim for intentional infliction of emotional distress in the Second Amended Complaint. Accordingly, this claim is deemed to be abandoned.

7

repeatedly failed to cure deficiencies in previous amendments. Foman v. Davis, 371 U.S. 178, 182 (1962); SCS Commc'n, Inc. v. Herrick Co., 360 F.3d 329, 345 (2d Cir. 2004). "The party opposing a motion for leave to amend has the burden of establishing that granting such leave would be unduly prejudicial." Media Alliance v. Mirch, No. 09-CV-659, 2010 WL 2557450, at *2 (N.D.N.Y. June 24, 2010) (Kahn, J.) (quoting New York v. Panex Indus., No. 94-CV-0400, 1997 WL 128369, at *2 (W.D.N.Y. Mar. 14, 1997)).

Defendants argue that Plaintiff's Motion to amend should be denied because the proposed amendments are futile and could not withstand a motion to dismiss. Dkt. No. 31 ("Opposition–Motion to Amend") at 2-6. Futility is an appropriate basis for denying leave to amend, and "should be contemplated within the standards necessary to withstand a motion to dismiss." Vail v. Fischer, No. 12-cv-1718, 2013 WL 5406637, at *3 (N.D.N.Y. Sept. 25, 2013). Accordingly, the Court will analyze the proposed Second Amended Complaint pursuant to Rule 12(b)(6).

**A. Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged

misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id., 556 U.S. at 678-79.

**B. Title VII**

Plaintiff has asserted claims for discrimination and retaliation under TitleVII. Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Retaliation and discrimination claims brought pursuant to Title VII are analyzed under the familiar burden-shifting framework established in McDonnell Douglas Corp. v. Greene, 411 U.S. 792 (1973). Under this framework, a plaintiff bears the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-510 (1993). This initial burden is "minimal." Id. at 506. Once the plaintiff satisfies her initial burden, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802. If the defendant provides a legitimate, nondiscriminatory reason for the action, "the presumption raised by the prima facie case is rebutted and drops from the case." St. Mary's, 509 U.S. at 507.

A complaint "need not allege facts establishing each element of a prima facie case of

9

discrimination to survive a motion to dismiss." EEOC v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir. 2014) (internal citations and quotation marks omitted). Rather, the complaint "must at a minimum assert nonconclusory factual matter sufficient to 'nudge[] [its] claims' . . . 'across the line from conceivable to plausible' to proceed." Id. (quoting Iqbal, 556 U.S. at 680). Stated differently, "to survive a motion to dismiss, a Title VII plaintiff's complaint must be facially plausible and allege sufficient facts to give the defendant fair notice of the basis for the claim; it need not, however, make out a prima facie case." Brown v. Dakin Am. Inc., 756 F.3d 219, 228 n.10 (2d Cir. 2014). Additionally, there is no need to evaluate a plaintiff's claims under the McDonnell Douglas burden-shifting framework at the motion to dismiss stage. Boykin v. KeyCorp, 521 F.3d 202, 212 (2d Cir. 2007). The McDonnell Douglas burden-shifting framework "is an evidentiary standard, not a pleading requirement." Swierkiewicz v. Sorema, 534 U.S. 506, 508 (2002).

Nevertheless, courts often consider whether a plaintiff has set forth the elements of a *prima facie* case of discrimination when determining whether a plaintiff's claims for relief are plausible. See Trachtenberg v. Dep't of Educ. of N.Y.C., 937 F. Supp. 2d 460, 466 (S.D.N.Y. 2013). The purpose of this inquiry is to ensure that there is "sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiff's claim and the grounds on which it rests." Henry v. N.Y.C. Health & Hosp. Corp., 18 F. Supp. 3d 396, 404 (S.D.N.Y. 2014) (internal quotation marks omitted). "Generally speaking, a plaintiff's burden of establishing a *prima facie* case in the context of employment discrimination law is 'minimal.'" Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002) (citation omitted).

*1. Discrimination*

In order to plead a plausible claim of Title VII discrimination, the plaintiff must allege that

(1) he is a member of a protected class; (2) he is qualified for a disputed employment position; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination. Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004).

The terms of Title VII "are not limited to discrimination against members of any particular race," McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 278-79 (1976); rather, "[d]iscriminatory preference for any group, minority or majority, is precisely and only what Congress has proscribed," Griggs v. Duke Power Co., 401 U.S. 424, 431 (1971); see also McGuiness v. Lincoln Hall, 263 F.3d 49, 53 (2d Cir. 2001) (finding first prong of prima facie racial discrimination case satisfied where white woman alleged that fellow employee, a similarly situated African-American, received a superior severance package). In the present case, Plaintiff has alleged that Kucevic harassed and intimidated Plaintiff because Kucevic favored employees who shared her Bosnian heritage. Sec. Am. Compl. ¶¶ 8r, 8q, 8t. Plaintiff does not necessarily allege that she was discriminated against because of her Vietnamese heritage, but does allege facts to suggest that she was discriminated against because she was not Bosnian, the preferred national origin of her line supervisor, Kucevic. Accordingly, the first element is satisfied.

The second and third elements are uncontested. Plaintiff alleges that she satisfactorily performed her duties and received positive performance evaluations up until the alleged harassment by Kucevic began. Sec. Am. Compl. ¶¶ 8b, 8o. Plaintiff alleges that she suffered adverse employment actions in the form of unwarranted reprimands and false accusations by Kucevic. Id. ¶¶ 8s, 8u, 8x, 8dd, 8aa, 8uu.

Turning to the fourth element, Defendants argue that the Second Amended Complaint is

deficient because it includes "a litany of Title VII buzzwords," but no specific factual allegations that demonstrate that any actual discrimination and/or retaliation occurred. Opp'n– Mot. Amend at 2. A plaintiff may raise an inference of discrimination for the purposes of establishing a prima facie case by "showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group.'" Mandell v. Cty. of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003). However, a plaintiff must be "similarly situated in all material respects to the individuals with whom she seeks to compare herself." Id. Whether two employees are similarly situated is ordinarily a question of fact for the jury. Id.

The Court finds that the Second Amended Complaint contains sufficient factual examples to satisfy Plaintiff's minimal burden of alleging discriminatory treatment. Plaintiff alleges that Kucevic, a supervisor, favors individuals who share her Bosnian heritage and formed a "clique" with Plaintiff's co-workers who spoke the same language as Kucevic. Sec. Am. Compl. ¶¶ 8r, 8q, 8w. The clique made false accusations against Plaintiff and corroborated each other's statements. Id. ¶ 8w. Plaintiff alleges that Kucevic "set her up to fail" by refusing to allow Plaintiff's co-workers to help her on the production line. Id. ¶ 8uu. Plaintiff alleges that Bosnian workers did not face this type of treatment. Id. ¶¶ 8t, 8ll. Accordingly, the Court finds that the Second Amended Complaint states a prima facie case of discrimination.

### 2. Retaliation

In order to set forth a prima facie case for retaliation pursuant to Title VII, a plaintiff must allege: (1) the employee engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) that there was a causal connection between the protected activity and that adverse action. See Rivera v. Rochester Genessee Reg'l

Transp. Auth., 743 F.3d 11, 24 (2d Cir. 2012). In the present case, the first three elements of Plaintiff's retaliation claim are undisputed. Plaintiff engaged in a protected activity by reporting what she perceived to be instances of discrimination to DeIorio management on numerous occasions, filing a hostile working environment grievance with her union, and eventually filing grievances with the EEOC. Simpson v. N.Y. State Dep't of Civil Serv., No. 02-CV-1216, 2005 WL 545349, at *20 (N.D.N.Y. Mar. 1, 2005) ("Plainly the filing of an EEOC complaint is a protected activity."); Costello v. N.Y. State Nurses Ass'n, 783 F. Supp. 2d 656, 680-81 (S.D.N.Y. 2011) (stating that the filing of a union grievance is also a Title VII protected activity). Plaintiff's employer was aware of her protected activity, as evidenced by numerous meetings and conversations between Plaintiff, her union representative, and DeIorio management regarding the situation with Kucevic. Plaintiff suffered adverse employment actions in the form of multiple suspensions, her termination, and her alleged constructive discharge.

As with Plaintiff's discrimination claim, Defendants argue that the Second Amended Complaint lacks sufficient factual allegations to suggest that Plaintiff's adverse employment actions were motivated by retaliatory animus. Opp'n– Mot. Amend at 2. For the purpose of stating a prima facie case, a plaintiff may demonstrate causation by, *inter alia*, "showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence." Hicks v. Baines, 593 F.3d 159, 170 (2d Cir. 2010). While there is no bright line defining when the temporal proximity between protected activity and an adverse employment action is sufficient to give rise to an inference of causation, in general, a temporal gap of less than two months is sufficient to give rise to an inference of causation. See, e.g., Mazurkiewicz v. N.Y.C. Health & Hosp. Corp., No. 09 Civ. 5962, 2010 WL 3958852, at *5 (S.D.N.Y. Sept. 16, 2010) (finding

13

inference of causation where less than two months elapsed between protected activity and adverse action).

In the present case, it appears that Plaintiff's issues with Kucevic escalated in November 2013. See Sec. Am. Compl. Plaintiff filed a hostile work environment grievance with her union on November 11, and was suspended four days later. Id. ¶¶ 8v, 8gg. Moreover, Plaintiff alleges that she was suspended by Wilson after naming Burnett and Wilson in her EEOC complaint. Id. ¶¶ 8zz, 8aaa. The official EEOC charge of discrimination was issued on January 21; Plaintiff was suspended on February 7; and her employment was terminated on February 13. Id. ¶¶ 8yy, 8zz, 8aaa. The temporal proximity between Plaintiff's protected activity and this series of adverse employment actions is sufficient to give rise to an inference of retaliatory animus sufficient to survive a motion to dismiss. See Hexemer v. Gen. Elec. Co., No. 12-cv-1808, 2015 WL 39484188, at *7 (N.D.N.Y. June 29, 2015) (Kahn, J.) (finding temporal gap of less than a week between protected activity and adverse employment action "more than sufficient to create an inference of causation"). Accordingly, the Second Amended Complaint has stated a *prima facie* case of retaliation.

**C. Breach of Contract and Promissory Estoppel**

Plaintiff's breach of contract claim is based on DeIorio's employee manual. Sec. Am. Compl. at 23.[4] Plaintiff alleges that Defendants "promulgated express and written statements of employment policies, practices and procedure which it provided and disseminated to all of its employees." Id. at 24. Specifically, Plaintiff alleges that DeIorio represented both orally and in

---

[4] For pages in the Second Amended Complaint that do not contain paragraphs, citations correspond to the page numbers assigned by the Court's Electronic Filing System.

14

writing that it would treat employees in a specific, fair and equitable manner and that it would investigate allegations of discrimination and/or retaliation in a fair, impartial and nondiscriminatory way. Id. However, "it is 'well-established that an employer's antidiscrimination policies and manuals cannot serve as the basis for a breach of contract claim.'" Carris v. First Student, Inc., No. 13-CV-0923, 2015 WL 5535807, at *16 (N.D.N.Y. Sept. 18, 2015) (quoting Davis v. Oyster Bay-East, No. 03-CV-1372, 2006 WL 657038, at *15 (E.D.N.Y. Mar. 9, 2006)). The rationale behind this conclusion is that a "general statement of equal opportunity and nondiscrimination contained in an employee handbook . . . is nothing more than a statement of existing law concerning discrimination, [and] may not serve as a basis for a breach of contract claim." Blaise-Williams v. Sumitomo Bank, Ltd., 592 N.Y.S.2d 41, 42 (1st Dep't 1993).

Similarly, "it is well established that New York law does not recognize promissory estoppel in the employment context." Kramsky v. Chetrit Group, LLC, Nos. 10 Civ 2638 & 9458, 2011 WL 2326920, at *4 (S.D.N.Y. June 13, 2011) (dismissing plaintiff's promissory estoppel claim where he was allegedly promised a General Counsel position, which he relied upon in closing his private legal practice). Even if promissory estoppel were cognizable in the employment context, Plaintiff has failed to articulate a plausible claim. Under New York law, a claim for promissory estoppel requires "a clear and unambiguous promise; a reasonable and foreseeable reliance by the party to whom the promise is made; and an injury sustained by the party asserting the estoppel by reason of his reliance." Esquire Radio & Elec., Inc. v. Montgomery Ward & Co., 804 F.2d 787, 793 (2d Cir. 1986) (quoting Restatement (Second) of Contracts § 90 (1981)). To the extent that Plaintiff's promissory estoppel claim is based on promises in the employee manual regarding anti-discrimination and investigations of wrongdoing, the Court has already addressed that an employee

15

manual cannot form the basis for such a claim. Accordingly, the Court finds that Plaintiff's breach of contract and promissory estoppel claims are subject to dismissal.

### D. Vicarious Liability

In the Second Amended Complaint, Plaintiff asserts a purported cause of action for "vicarious liability." Sec. Am. Compl. at 27. However, vicarious liability is not a separate cause of action, but rather a theory by which a third party can be held responsible for a tort committed by another party. Zatz v. Wells Fargo Home Mortg., No. 08 Civ. 11225, 2010 WL 3026536, at *2 n.9 (S.D.N.Y. Aug. 2, 2010). Accordingly, to the extent that Plaintiff asserts a separate cause of action for vicarious liability, that claim is dismissed. However, the Court will treat Plaintiff's "vicarious liability" cause of action as an assertion that DeIorio is vicariously liable for unlawful harassment by its employees. See City of Syracuse v. Loomis Armored US, LLC, 900 F. Supp. 2d 274, 290 (N.D.N.Y. 2012) (dismissing successor liability claim as separate cause of action, but construing as assertion that defendant is liable for conduct of its predecessor).

To the extent that Plaintiff's "vicarious liability" claim can be construed as a negligence claim, the claim also must fail. Drawing all inferences in Plaintiff's favor, the Second Amended Complaint asserts a claim that Defendants should be held liable under common law negligence based on their failure to supervise Kucevic and to prevent the establishment of a hostile working environment. Sec. Am. Compl. at 27-28. Under New York law, New York Workers' Compensation provides the exclusive remedy for negligence claims that accrue in the workplace. N.Y. WORK. COMP. LAW § 29(6) ("The right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee . . . when such employee is injured or killed by the negligence or wrong of another in the same employ."); see also Torres v. Pisano, 116 F.3d 625, 640 (2d Cir.

1997) (finding negligence claim for hostile work environment barred by exclusivity of workers compensation); Burlew v. Am. Mut. Ins. Co., 472 N.E.2d 682, 684 (N.Y. 1984) (holding that a claim of negligence against an employer is barred by workers' compensation).

The exclusivity of the workers' compensation scheme does not, however, preclude suit if the employer committed an intentional tort or another person committed such an intentional tort at the employer's direction. Torres, 116 F.3d at 640. Moreover, the intentional tort exception is unavailable where a plaintiff pleads his or her claims in terms of negligence and not intentional wrong. See id. (finding the "exception is obviously not applicable to Torres' claim of negligence"); see also Chrzanowski v. Lichtman, 884 F. Supp. 751, 756 (W.D.N.Y. 1995) ("Plaintiffs argue that their claims fall under the intentional tort or wrong exception. However, the claims at issue are pled in terms of negligence, not intentional wrong . . . . The negligence claims are clearly barred by the exclusivity provision."); Hart v. Sullivan, 445 N.Y.S.2d 40, 41 (3d Dep't 1981) (dismissing plaintiff's sexual harassment and discrimination claims because the lack of willfulness on the part of the corporate employer, as opposed to wilful conduct by plaintiff's co-workers, necessitated the conclusion that plaintiff's negligence claim was barred by workers' compensation). In the present case, Plaintiff alleges intentional and wilful conduct on the part of Kucevic, an employee of Defendants, but does not allege intentional wrongdoing on the part of her employer. Accordingly, the Court finds that Plaintiff's negligence claim is barred by the exclusivity provision of New York Workers' Compensation law and is therefore subject to dismissal.

**E. Additional Defendants**

In the Second Amended Complaint, Plaintiff attempts to add DeIorio Food Holdings, LLC as a defendant. Sec. Am. Compl. at 1. Plaintiff asserts that the existence of DeIorio Food Holdings

17

was recently discovered following the filing of DeIorio's Rule 7.1 Disclosure Statement. Id. Defendants oppose the addition of DeIorio Food Holdings, LLC, on the basis that Plaintiff has failed to allege any facts suggesting wrongdoing on the part of DeIorio Food Holdings, LLC, or alleging that DeIorio Food Holdings, LLC is in any way liable to Plaintiff. Opp'n- Mtn. to Amend at 11. Defendants further argue that Plaintiff has failed to allege sufficient facts to sustain her claims against LSCG Managment, Inc., LaSalle Capital Group Partners, LLC, and LaSalle Capital Group Partners II-A, LLC (collectively, the "LaSalle Defendants"). Id.

The Second Amended Complaint contains no facts alleging that DeIorio Food Holdings, LLC or the LaSalle Defendants were Plaintiff's employer, or asserting that these entities should be liable as parent corporations of DeIorio. As a matter of policy, courts presume the separateness of legally distinct corporate entities. See Volkswagenwerk AG v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984). Plaintiff has failed to plead sufficient facts to allow the court to infer that these separate corporate entities should be disregarded and treated as a single employer. See Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1325, 1240 (2d Cir. 1995). Accordingly, Plaintiff's request to add DeIorio Food Holdings, LLC as a defendant is denied, and Plaintiff's claims against the LaSalle Defendants are dismissed.

## IV. CONCLUSION

Upon review, the Court determines that Plaintiff's Second Amended Complaint asserts claims for discrimination and retaliation sufficient to withstand a motion to dismiss pursuant to Rule 12(b)(6). Therefore, allowing amendment would not be futile. The Court finds, however, that Plaintiff's claims for breach of contract, promissory estoppel, and negligence cannot withstand a motion to dismiss and are therefore dismissed. The Second Amended Complaint is now the

operative pleading in this action, and replaces Plaintiff's original Complaint and Amended Complaint in their entirety.[5] Because Plaintiff did not reassert her claim for intentional infliction of emotional distress in the Second Amended Complaint, that claim is deemed abandoned.

Accordingly, it is hereby:

**ORDERED**, that Plaintiff's Motion (Dkt No. 28) for leave to amend is **GRANTED**; and it is further

**ORDERED**, that the Second Amended Complaint (Dkt. No. 28) is now the operative pleading in this action; and it is further

**ORDERED**, that Plaintiff's request to add DeIorio Food Holdings, LLC as a defendant in this action is **DENIED**; and it is further

**ORDERED**, that all claims against LSCG Management, Inc., LaSalle Capital Group Partners, LLC, and LaSalle Capital Group Partners II-A LLC are **DISMISSED**; and it is further

**ORDERED**, that Plaintiff's breach of contract, promissory estoppel, vicarious liability, intentional infliction of emotional distress, and negligence claims are **DISMISSED**; and it is further

**ORDERED**, that Defendant's Motion (Dkt. No. 15) to dismiss is **DENIED as moot**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

---

[5] "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." Arce v. Walker, 139 F.3d 329, 332 n.4 (2d Cir. 1998) (quoting Int'l Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977)).

**IT IS SO ORDERED.**

DATED:    February 29, 2016
          Albany, New York

_Lawrence E. Kahn_
Lawrence E. Kahn
U.S. District Judge