UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THAM T. LAI,

                Plaintiff,

  -against-                                      6:15-CV-0195 (LEK/TWD)

DEIORIO FOODS, INC.

                Defendant.
_____

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Tham T. Lai, a former employee of defendant DeIorio Foods, Inc., brings discrimination, hostile work environment, and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Dkt. No. 28 ("Second Amended Complaint"). Defendant moves for summary judgment on each claim. Dkt. Nos. 127 ("Motion"), 127-1 ("Memorandum"). For the reasons that follow, Defendant's Motion is granted.

**II.    BACKGROUND**

    **A.  Factual History**

Defendant is a manufacturer of "frozen dough products." Dkt. No. 127-2 ("Statement of Material Facts") ¶ 1. Plaintiff, a Vietnamese-American, began working in Defendant's dough production facility in Utica, New York on July 6, 2011. SAC at 6.[1] As a "packer," Plaintiff was responsible for packaging and labeling Defendant's products, and for occasionally loading batches of dough into a proofing oven. Dkt. Nos. 127-4 to -5 ("Lai Deposition") at 19–21. In

---

[1] The cited page numbers for this document refer to those generated by the Court's electronic filing system ("ECF").

July 2013, Ismetta Kucevic was promoted to the position of "production supervisor," making her Plaintiff's immediate supervisor. SMF ¶ 16.

Between November 8, 2013, and November 13, 2013, Plaintiff filed four grievances alleging that Kucevic mistreated her. Dkt. No. 127-6 ("Exhibits") at 9–15.[2] Plaintiff sent three of these grievances via email to Diana Pilatzke, id. at 9, 11–15, one of Defendant's human resources supervisors, Dkt. No. 127-7 ("Pilatzke Affidavit") ¶ 2. She filed a fourth grievance through her union pursuant to its collective bargaining agreement ("CBA"). Exs. at 10. The grievances emailed to Pilatzke alleged that Kucevic was often "angry" and "loud" when she spoke with Plaintiff, that she was "[a]ggressi[ve]," and that she "falsely" accused Plaintiff of misconduct. E.g., id. at 9, 12. The grievances also stated that Kucevic was kinder to "the workers that speak her language." Id. at 9. Plaintiff clarified in her deposition that Kucevic spoke Bosnian with these co-workers. Lai Dep. at 101–02. Plaintiff stated that Kucevic and her Bosnian co-workers "formed a [c]lique," and that "they ma[d]e false accusations" against Plaintiff and her co-workers. Exs. at 11. The grievance filed through Plaintiff's union simply stated, "Hostile Work Environment!" Id. at 10. Defendant investigated the allegations that Plaintiff raised against Kucevic and found that Kucevic had committed "no improper harassment." Pilatzke Aff. ¶ 23. The grievance Plaintiff submitted through her union "was . . . formally resolved as part of the CBA grievance process on December 20, 2013." SMF ¶ 27.

During November 2013, several of Plaintiff's co-workers complained to Defendant that she had harassed them. Pilatzke Aff. ¶ 25. Plaintiff allegedly told one employee "that she did not want to see her . . . 'ugly face'," and told another co-worker, "Bitch, you don't know what you're

---

[2] The cited page numbers for this document refer to those generated by ECF.

doing, you need to be sent home." Id. ¶ 26. Defendant suspended Plaintiff for three days while investigating these complaints. Id. ¶ 27; SAC at 12. Defendant concluded that the allegations against Plaintiff were well-founded, SMF ¶ 27, and she was issued a "verbal notice" that warned her against further harassing her co-workers, Pilatzke Aff. ¶ 27.

On December 13, 2013, an employee alerted Kucevic that Plaintiff was improperly setting "pans onto a conveyor," which could "jam" an expensive "freezing unit." SMF ¶ 34. Kucevic and another production supervisor both showed Plaintiff how to correctly place the pans onto the conveyor. Id. ¶¶ 35–36. Plaintiff disregarded their instructions and did not correct her placement of the pans, and the freezing unit jammed. Id. ¶¶ 36–37. Plaintiff was suspended with pay for a week and received a written warning for "ignoring supervisors' directives" when she returned to work. Id. ¶ 39. Following her suspension, Plaintiff filed a grievance with the Equal Employment Opportunity Commission ("EEOC"), reiterating her previous grievances against Kucevic, and attributing Kucevic's behavior, as well as Plaintiff's two suspensions, to national origin discrimination and retaliation. Exs. at 20–21.

On February 7, 2014, Plaintiff attended a "training on food safety" regarding Defendant's customer's "specialty product." Dkt. No. 127-10 ("Kucevic Affidavit") ¶ 11. The training was implemented to ensure employee safety and that employees could comply with "the customer's particular specifications" for handling the product. Id. ¶ 12. Kucevic required all employees who attended the training to sign a form "memorializing that [they] had attended the training." Id. ¶ 11. Plaintiff refused to sign the form. Id. ¶ 13. She stated in her deposition that she wanted to call her husband before she signed the form. Lai Dep. at 131. Kucevic maintains that Plaintiff "acknowledged that she read the form and understood it." Kucevic Aff. ¶ 14. After Kucevic and

3

Plaintiff's union representative failed to persuade her to sign the form, Plaintiff was suspended for insubordination. SMF ¶¶ 50–52. After considering this incident, together with Plaintiff's past misconduct, Defendant terminated her employment on February 12, 2014. Id. ¶¶ 55–56.

Plaintiff contested her termination by filing an EEOC grievance, Exs. at 35, and by filing a separate grievance through her union, SMF ¶ 57. At the November 13, 2014 arbitration hearing regarding the latter grievance, the arbitrator determined that, although Plaintiff had engaged in misconduct warranting discipline during her employment, Defendant did not have "just cause" for terminating her employment as defined in the CBA. Id. ¶¶ 59–61. Pursuant to the arbitration order, Defendant reinstated Plaintiff on December 8, 2014. Id. ¶ 63. After taking and passing a drug test on December 8, Plaintiff left work, called in sick for the next three days, and sent an email to Pilatzke declaring that she was quitting her employment with Defendant effective December 12, 2014. Id. ¶¶ 64–68; Exs. at 33–34. In this email, Plaintiff stated that she was resigning because Defendant did not provide her with insurance that was active on December 8, required her to take a drug test, and placed a "Bulls Eye Target on [her] back." Exs. at 33–34. Several months after she resigned, Plaintiff filed a third EEOC grievance, which complained that being required to take a drug test constituted retaliation and national origin discrimination. Id. at 36–37.

### B. Procedural History

Plaintiff commenced this action on February 20, 2015. Dkt. No. 1 ("Complaint"). She filed an amended complaint, Dkt. No. 7 ("Amended Complaint"), and Defendant moved to dismiss the action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Dkt. No. 15 ("Motion to Dismiss"). Plaintiff moved to file a second amended complaint. SAC. The SAC

4

named as defendants DeIorio Foods, Inc., LSCG Management, Inc., LaSalle Capital Group Partners LLC, and LaSalle Capital Group Partners II-A LLC, alleging various violations of Title VII and breach of contract, promissory estoppel, and vicarious liability claims. SAC. The Court, in a Memorandum-Decision and Order dated February 29, 2016, denied Defendant's Motion to Dismiss as moot, deemed the SAC the operative pleading in this action, dismissed all defendants except for DeIorio Foods, Inc., and dismissed Plaintiff's breach of contract, promissory estoppel, and vicarious liability claims. Dkt. No. 37 ("February 2016 Order").

### III.  LEGAL STANDARD

A court must grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id.

While the nonmoving party must do "more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), a court at the summary judgment stage must "review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

Finally, a "court must be cautious about granting summary judgment to an employer" in discrimination cases because it is often the case that the employer's "intent is at issue." Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994); accord Bader v. Special Metals Corp., 985 F. Supp. 2d 291, 305 (N.D.N.Y. 2013) (Kahn, J.). Nevertheless, "summary judgment remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 608 (2d Cir. 2006) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997)). See also Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases.").

IV.   DISCUSSION

   A.  Discrimination

Title VII prohibits an employer from discriminating against an employee "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Plaintiff alleges that she "is a member of a [protected] class," SAC at 20, but does not specify which of these classes form the basis of her Title VII claim. However, because she states that she is Vietnamese, id., and because the EEOC grievances that she filed against Defendant stated that she was discriminated against on the basis of national origin, Exs. at 20, 35–37, the Court assumes that her Title VII discrimination claims are premised on national origin discrimination.

Title VII discrimination claims based are analyzed using the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Ruiz v. County of Rockland, 609 F.3d 486, 491–92 (2d Cir. 2010) (citing McDonnell Douglas, 411 U.S.). Under

6

this framework, a plaintiff must first "establish a prima facie case of discrimination." Id. (citing Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008)). To establish a prima facie case, "a plaintiff must show that (1) [s]he is a member of a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." Id. (citing Holcomb, 521 F.3d at 140). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for carrying out the adverse employment action. Id. at 492. "If the defendant does so, the burden returns to the plaintiff to show that" the defendant's proffered reason was a mere pretext for discrimination. Id.

Defendant suspended Plaintiff three times, and terminated her employment on December 8, 2014. SMF ¶¶ 29, 38, 52, 56. Assuming that each of these disciplinary actions constitute adverse employment actions, the Court nonetheless finds that Plaintiff fails to establish a prima facie case of discrimination because she provides no evidence indicating that her suspensions or her termination were motivated by discriminatory animus.

### 1. November 22, 2013 Suspension

Bryan Wilson, Defendant's vice president of manufacturing, and Fred Sarus, a production manager, suspended Plaintiff for three days beginning on November 22, 2013, while investigating harassment allegations that several co-workers raised against Plaintiff. SAC at 12; SMF ¶¶ 29–31. One co-worker complained that Plaintiff "did not want to see her co-worker's 'ugly face,' and another co-worker alleged that Plaintiff stated to her[,] "Bitch, you don't know what you're doing, you need to be sent home[.]'" SMF ¶ 28. The available evidence does not suggest that discriminatory animus motivated Wilson and Sarus's decision to suspend Plaintiff.

7

She admits that she never heard Wilson or Sarus make negative comments about her Vietnamese background. Lai Dep. at 37–38. Moreover, Plaintiff provides no evidence of similarly situated non-Vietnamese employees who received preferential treatment—for instance, she does not identify a non-Vietnamese person who was the subject of multiple plausible harassment complaints but was *not* suspended pending an investigation. Because the record does not permit an inference that Plaintiff's November 22, 2013 suspension was motivated by discriminatory animus, this incident does not support her discrimination claim.

2. *December 13, 2013 Suspension*

On December 13, 2013, Plaintiff, disregarding instructions from Kucevic and another production supervisor, improperly loaded "pans onto a conveyor," which caused an expensive freezing unit to jam, "causing lost production time and wasted product." SMF ¶¶ 34, 37. Plaintiff was suspended with pay for a week, and received a written warning for "ignoring supervisors' directives" when she returned to work. Id. ¶ 39. Plaintiff states that Michelle Burnett, Defendant's chief financial officer in 2013, was responsible for suspending her. Dkt. No. 127-9 ("Burnett Affidavit") ¶ 2; SAC at 15. The available evidence does not suggest that discriminatory animus motivated Burnett's decision. Plaintiff admits in her deposition that Burnett never commented on Plaintiff's Vietnamese background. Lai Dep. at 36. Moreover, although Plaintiff asserts that the freezing unit jammed "all the time," id. at 92, she fails to identify any instances where a non-Vietnamese person caused an expensive equipment malfunction after ignoring their supervisors' instructions and was *not* suspended or disciplined. Because Plaintiff does not provide evidence indicating that her suspension on December 13, 2013 was motivated by discriminatory animus, this incident does not support her discrimination claim.

8

### 3. February 7, 2014 Suspension and Subsequent Termination

On February 7, 2014, Plaintiff attended a food safety training and, unlike the other employees who attended the training, refused to sign a form "memorializing that she had attended the training." Kucevic Aff. ¶ 11. Although Plaintiff "acknowledged that she read the form and understood it," id. ¶ 14, she states that she refused to sign the form because she wanted to call her husband first, Lai Dep. at 131. Wilson suspended Plaintiff for insubordination after Kucevic and Defendant's union steward failed to persuade her to sign the form. SMF ¶¶ 50–52; SAC at 15. On February 12, taking into account this incident and Plaintiff's prior acts of misconduct, Defendant terminated her employment. SMF ¶¶ 55–56. Like the earlier disciplinary actions taken against Plaintiff, no evidence in the record suggests that discriminatory animus motivated her February 7 suspension or subsequent termination. Notably, she does not provide any evidence of any other employee who refused to sign the training form, let alone a non-Vietnamese employee who refused to sign a product safety training form and was not suspended. Similarly, Plaintiff has not identified any non-Vietnamese employee who had a similar track record of misconduct but was not fired.

### 4. Kucevic's Alleged Discrimination

Plaintiff alleges that Kucevic harbored bias against her. Exs. at 11–12. However, although the record places Kucevic at the scene of several of Plaintiff's acts of misconduct, it does not appear that Kucevic played a role in any of Plaintiff's suspensions or in her termination. Moreover, Plaintiff presents insufficient evidence to support an inference that Kucevic harbored anti-Vietnamese bias. Plaintiff states, in vague terms and without providing examples, that Kucevic harshly scrutinized her performance, displayed "[a]nger" and "[a]ggressi[on]" when

9

speaking with Plaintiff, Exs. at 12–14, and would "talk loud in front of people and embarrass" her, Lai Dep. at 26. However, even if these observations indicate that Kucevic was rude to Plaintiff, they do not create an inference that Kucevic harbored animus toward her on account of her Vietnamese background. See DeLaurencio v. Brooklyn Children's Ctr., Superintendent, 111 F. Supp. 3d 239, 249 (E.D.N.Y. 2015) (holding that evidence of a supervisor's "personal enmity" toward plaintiff, without more, did not permit an inference of racial discrimination); Plahutnik v. Daikin Am., Inc., 912 F. Supp. 2d 96, 103 (S.D.N.Y. 2012) ("Increased or excessive scrutiny cannot, without more, support a Title VII discrimination claim."); Wilson v. Family Dollar Stores of New York, Inc., No. CV-6-639, 2008 WL 4426957, at *8 (E.D.N.Y. Sept. 25, 2008) (observing that behavior that is "rude and unprofessional," without more evidence of bias, "merely indicates personal enmity rather than discrimination and thus does not violate Title VII").

Plaintiff also states in her deposition that Kucevic favored her Bosnian co-workers. Lai Dep. at 101–02. However, Plaintiff does not provide any details that would support her assertion that Kucevic favored Bosnian co-workers or that Kucevic discriminated against "[p]eople that are not from Bosnia." Id. at 102. This broad accusation is too vague and conclusory to support an inference of discriminatory animus. See Kaur v. New York City Health & Hosps. Corp., No. 07-CV-6175, 2010 WL 11589961, at *2 (S.D.N.Y. May 10, 2010) ("[I]n the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." (quoting Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997))). Similarly, Plaintiff's assertion that Kucevic and her Bosnian co-workers "formed a [c]lique," and that this clique "ma[d]e false accusations" against Plaintiff and her co-workers,

10

Exs. at 11, is completely devoid of factual detail and is insufficient to create an inference that Kucevic discriminated against Plaintiff on account of her national origin.

In sum, Plaintiff's numerous allegations regarding Kucevic's discriminatory animus are unsupported and fail to raise an inference that Kucevic was biased against Plaintiff on the basis of her national origin. Therefore, even if Kucevic had played a part in Plaintiff's suspensions or termination, this would not support her discrimination claim. Because Plaintiff fails to establish that any of the adverse employment actions Defendant carried out were motivated by discriminatory animus, she has not established a prima facie case of discrimination, and the Court grants Defendant's Motion for summary judgment with respect to Plaintiff's discrimination claim.

### B.  Hostile Work Environment

Plaintiff alleges that she "was . . . subjected to [a] continuous pattern of discrimination" while working for Defendant, and that Kucevic "discriminated, harassed, intimidated, and threatened [her] on a regular basis." SAC at 8. Furthermore, she states that, when she was reinstated on December 8, 2014, Defendant "creat[ed] intolerable working conditions [that] made it clear that [it] . . . had no plans in the future to stop the discrimination." Id. at 18. Construed liberally, Plaintiff alleges that she was subjected to a hostile work environment while working for Defendant. To establish a hostile work environment claim, a plaintiff must demonstrate that she was subjected to harassment that was "sufficiently severe or pervasive to alter the conditions of . . . [her] employment and create an abusive working environment." Perry v. Ethan Allen, Inc., 115 F.3d 143, 149 (2d Cir. 1997) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)); accord Kaytor v. Elec. Boat Corp., 609 F.3d 537, 546 (2d Cir. 2010). Moreover, the incidents

giving rise to a hostile work environment must have "'occur[ed] because of an employee's . . . protected characteristic,' such as race or national origin." Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014) (quoting Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001)).

Plaintiff's hostile work environment claim fails for the same reason that her discrimination claim failed. To the extent that Plaintiff felt harassed or intimidated at work, she provides no evidence to suggest that any of this harassment occurred *because* of her national origin. Moreover, allegations that Plaintiff's supervisors occasionally reprimanded her after she engaged in misconduct, coupled with allegations that Kucevic often raised her voice when speaking with Plaintiff, fall far short of describing treatment that is "severe or pervasive" and capable of "alter[ing] the conditions of [Plaintiff's] employment." Perry, 115 F.3d at 149; see also Miller v. Kohl's Dep't Stores, Inc., No. 17-CV-6081, 2017 WL 4890199, at *2 (W.D.N.Y. Oct. 30, 2017) ("Title VII does not create a general civility code for the American workplace." (quoting Adams v. Festival Fun Parks, LLC, 560 F. App'x 47, 51 (2d Cir. 2014))).

For these reasons, the Court grants Defendant's Motion for summary judgment with respect to Plaintiff's hostile work environment claim.

### C. Retaliation

Plaintiff alleges that her three suspensions, her termination, and her alleged mistreatment after her reinstatement in December 2014, were not only motivated by discriminatory animus, but also by a desire to retaliate against her for filing numerous grievances during her employment. SAC at 6–8. Title VII states, "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice

made an unlawful employment practice by" Title VII. § 2000e-3(a). Establishment of a retaliation claim follows the McDonnell Douglas burden-shifting framework described in the discrimination section above. Zann Kwan v. Andalex Group, LLC, 737 F.3d 834, 844 (2d Cir. 2013) (citing McDonnell Douglas, 411 U.S.).

> Under the first step of the McDonnell Douglas framework, the plaintiff must establish a prima facie case of retaliation by showing 1) 'participation in a protected activity'; 2) the defendant's knowledge of the protected activity; 3) 'an adverse employment action'; and 4) 'a causal connection between the protected activity and the adverse employment action.

Id. at 844 (quoting Jute v. Hamilton Sundstand Corp., 420 F.3d 166, 173 (2d Cir. 2006)). Once the plaintiff establishes a prima facie case of retaliation, "'the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason' for the adverse employment action." United States v. Brennan, 650 F.3d 65, 93 (2d Cir. 2011) (quoting McDonnell Douglas, 411 U.S. at 801). The plaintiff must then establish that the defendant's purported reason was a "pretext" for retaliation. Id.

*1. Retaliation Claims Based on Plaintiff's Suspensions and Terminatino*

Here, even assuming that Plaintiff can establish a prima facie case of retaliation regarding her suspensions and her termination, her retaliation claims still fail because Defendant has provided a legitimate, non-retaliatory justification for each disciplinary action, and there is insufficient evidence to suggest that any proffered justification is pretextual. Defendant's burden in articulating a legitimate reason for carrying out an adverse employment action is minimal, and "can involve no credibility assessment." Reeves, 530 U.S. at 142; see also Baka v. Prime Charter, Ltd., 301 F. Supp. 2d 308, 314 (S.D.N.Y. 2004) ("There is no need to assess the credibility of the

13

proffered reason at this stage nor does [a defendant] have to show that it actually relied on these reasons.").

As discussed above, Defendant states that it suspended Plaintiff in November 2013 following harassment complaints from her co-workers, in December 2013 after Plaintiff ignored instructions from two supervisors and caused a freezing unit to jam, and in February 2014 after Plaintiff displayed insubordination by refusing to sign a product safety training form. Finally, Defendant states that it terminated Plaintiff after taking into account the cumulative severity of her misconduct. These are plainly legitimate, non-retaliatory justifications for taking disciplinary action against her. See Kemp v. A&J Produce Corp., 164 F. App'x 12, 16 (2d Cir. 2005) (stating that insubordination—defendant's proffered reason for terminating plaintiff—was legitimate); Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985) ("[A] profound inability to get along with . . . coworkers . . . represents a legitimate nondiscriminatory reason for an employment decision."); Lee v. Healthfirst, Inc., No. 04-CV-8787, 2007 WL 634445, at *24 (S.D.N.Y. Mar. 1, 2007) ("Plaintiff's insubordination and failure to fulfill her job responsibilities . . . are legitimate justifications for . . . her discharge.").

Plaintiff provides no evidence to suggest that Defendant's proffered legitimate reasons for her suspensions or her termination were pretextual. At this stage of the McDonnell Douglas analysis, Plaintiff "must establish that [her] protected activity was a but-for cause of the alleged adverse action by the employer." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2534 (2013). She may do so "by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." Zann Kwan, 737 F.3d at 846.

Plaintiff filed numerous grievances against Kucevic in November 2013, Exs. at 9–15, 18–19, and she was suspended multiple times a short time after these grievances were filed. Therefore, Plaintiff may have produced evidence of temporal proximity between her participation in a protected activity and Defendant's adverse employment actions. However, while "[t]he temporal proximity of events may give rise to an inference of retaliation for the purpose of establishing a prima facie case . . . without more, such temporal proximity is insufficient to satisfy [Plaintiff's] burden to bring forward some evidence of pretext." El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010).

Plaintiff provides no additional evidence of pretext. While she perfunctorily states "Plaintiff denies misconduct" in the majority of the paragraphs in her affidavit, Dkt. No. 128-2 ("Lai Affidavit") ¶¶ 6–19, 23–32, 35–36, 59, 61–68, 71, 73–79, 82, "affidavits must be based upon 'concrete particulars,' not conclusory allegations," in order to create a genuine issue of material fact, Bickerstaff v. Vassar Coll., 196 F.3d 435, 452 (quoting Schwapp, 118 F.3d at 111). Furthermore, Plaintiff cannot rely on her subjective impression that she did not commit misconduct. See Jaiyeola v. Carrier Corp., 562 F. Supp. 2d 384, 390 (N.D.N.Y. 2008) ("Plaintiff's subjective belief that he was a better performer than his supervisor believed him to be is insufficient to prove pretext."). Rather, she must come forward with evidence that Defendant did not have a good faith belief that she committed misconduct. See Kolesnikow v. Hudson Valley Hosp. Ctr., 622 F. Supp. 2d 98, 111 (S.D.N.Y. 2009) ("Where a plaintiff has been terminated for misconduct, the question is not 'whether the employer reached a correct conclusion in attributing fault [to the plaintiff] . . ., but whether the employer made a good-faith business determination.'" (alterations in original) (quoting Baur v. Rosenberg, Minc, Falkoff &

15

Wolff, No. 07-CV-8835, 2008 WL 5110976, at *5 (S.D.N.Y. Dec. 2, 2008))). Plaintiff does not present evidence suggesting that Defendant's decisions to suspend or terminate her were not based on a good faith belief that she committed misconduct. Therefore, she fails to establish the existence of pretext, and thus cannot establish that her three suspensions or her termination constituted retaliation.

*2. Alleged Retaliation Following Plaintiff's Reinstatement*

Construed liberally, Plaintiff alleges that, following her reinstatement with Defendant on December 8, 2014, Defendant retaliated against her by not immediately providing her with health insurance, requiring her to undergo drug testing, and creating conditions that were so unbearable that she was constructively discharged. Resp. at 16; Exs. at 33–34. The first two of these alleged acts of retaliation are not adverse employment actions. An adverse employment action in the retaliation context is an action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Hicks v. Baines, 593 F.3d 159, 165 (2d Cir. 2010) (quoting Burlington N. & Santa Fe Ry Co. v. White, 548 U.S. 53, 57 (2006)). Plaintiff cites no authority, and the Court could not find any, suggesting that an employer's failure to guarantee that an employee has health insurance on their first day of work would dissuade that employee from making a charge of discrimination. Similarly, "[w]ithout any accompanying indicia of harm, [P]laintiff's mere subjection to a single drug test was, at most, an inconvenience that does not rise to the level of an adverse employment action." Frazier v. N.Y.C. Dep't of Corr., No. 14-CV-1224, 2016 WL 4444775, at *3 (E.D.N.Y. Aug. 23, 2016).

Finally, Plaintiff fails to establish that her resignation on December 12, 2014, SMF ¶ 68, was a constructive discharge necessitated by Defendant's retaliation. "An employee is

16

constructively discharged when [her] employer . . . intentionally creates a work atmosphere so intolerable that [s]he is forced to quit involuntarily." Terry v. Ashcroft, 336 F.3d 128, 151–52 (2d Cir. 2003). "[W]here . . . a plaintiff is claiming that [s]he was constructively discharged based upon acts of retaliation, the acts complained of must actually constitute retaliation under Title VII." Bundschuh v. Inn on the Lake Hudson Hotels, Inc., 914 F. Supp. 2d 395, 408 (W.D.N.Y. 2012) (second alteration in original) (quoting Johnson v. Potter, No. 04-CV-6634, 2009 WL 2180354, at *17 (W.D.N.Y. July 22, 2009)).

At her deposition, Plaintiff clarified that her constructive discharge claim is based on Defendant's requirement that she take a drug test upon returning to work, and her subjective impression that "it wasn't safe to work there." Lai Dep. at 144–45. Because the drug test does not qualify as an adverse employment action for the purpose of a Title VII retaliation claim, it also cannot serve as the basis for a retaliatory constructive discharge claim. Moreover, each time that Plaintiff was asked at her deposition why she felt unsafe when she was reinstated, or why she felt unwelcome, or why she felt "like there was a bullseye target on [her] back," she responded, "I don't know." Lai Dep. at 145–47. Her impression that working for Defendant was unsafe, without any supporting detail, is too conclusory and undeveloped to permit an inference that Defendant "intentionally create[d] a work atmosphere so intolerable that" Plaintiff had to quit. Terry, 336 F.3d at 151–52. Because Plaintiff cannot identify any facts to suggest that she was subjected to an intolerable work environment upon her reinstatement, she has failed to establish a retaliatory constructive discharge claim.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion for summary judgment (Dkt. No. 127) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED: February 20, 2018
Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge